GARRARD, et al. *vs*. WEBB, et al.

*As to the power of Chancery to compel parties to per-*
*fect original agreements, against a subsequent lien.*
*Touching such decrees in Chancery as will not sustain*
*a writ of error.*

1. Where parties being applied to, to become the accommoda-
tion indorsers of one on a bill of exchange, to secure them-
selves, took a deed of trust on the latter's property, and en-
dorsed the bill, and the bill not being negotiated, subsequent-
ly executed a new bill, with the agreement, that a new deed
of trust should be executed ;—and on application to the trus-
tee for that purpose, the date of the original deed was chang-
ed to a later date, and duly recorded ; and afterwards the trus-
tee, on assurances of the debtor that the debt secured by the
deed had been paid, took a deed of trust to himself on the
same property—held, that Chancery had the power of decree-
ing a sale of the trust property, in favor of the original deed,
and thus saving the lien thereof, to the benefit of the first
*cestui que trust.*
2. A decree in Chancery, which, though disposing of the main
principles of the case, directs an enquiry by a commissioner
as to matters which require report to a subsequent term,—
and contains no decree for costs ;—is not such a decree as
will sustain a writ of error.

Writ of error to the Circuit Court of Lauderdale,
on a decree in Chancery.

The bill in this case was filed by Ezra Webb,
Charles Bradford, and Joseph L. D. Smith. It charg-
ed, that on the eighteenth day of March, eighteen
hundred and twenty-nine, orators, at the request of
one George Boggs, junior, became his accommoda-

4P          10

tion indorsers on a bill of exchange for four thousand eight hundred and eighty-nine dollars and eighty-one cents, drawn on White & McClain, of New Orleans, in favor of the complainant, Smith: that to secure the complainants against all liability on said bill, the said Boggs, according to agreement, caused to be prepared in complainants' favor, a deed of trust, in which William W. Garrard, was trustee, of sundry houses and lots, lying and situate in the town of Florence; which deed of trust was not fully executed, through the inattention of complainants. That on the eighteenth day of April, eighteen hundred and twenty-nine, the said Boggs again applied to complainants—informing them that the drawees of the said bill of exchange had refused to accept the same, unless complainants became joint drawers, with Boggs, thereof: that on Boggs' promise to secure complainants as aforesaid, by deed of trust, they did become joint drawers, on above date, with him, of a new bill of exchange, drawn on one of the former firm of White & McClain, for the amount of the first bill,—and which latter was destroyed—the other being accepted. That in the month of September, of the same year, complainants applied to the said Garrard for the purpose of having the said deed of trust perfected, and recorded: that Garrard, without adverting to the change in the responsibility of complainants, or to the execution of the second bill, adopted the deed which had been drawn upon the endorsement of the first bill of exchange, and changed the date thereof to the twentieth of September, eighteen hundred and twenty-nine; and that the same was then duly executed and recorded, without no-

tice of the discrepancy, until many years thereafter. The bill averred, that the deed of trust was executed alone for the indemnity of complainants on the last bill of exchange, though it referred to the first: that the said Boggs having, at the maturity of the bill of exchange, failed to discharge it, it was paid by one of the complainants. That Boggs having become entirely insolvent, the complainants applied to Garrard to carry into effect the said deed of trust, by sale of the trust property, but which he had always refused to do—alleging in himself the possession of a superior lien upon it. It, therefore, prayed relief, by the coercion of Garrard, the trustee, to a sale of the property conveyed, for the benefit of complainants.

The answer of Boggs admitted all the allegations of the bill, respecting the endorsement and drawing of the two bills of exchange: the execution of the deed of trust; the payment of the last by one of the complainants; and his own insolvency: denied all fraudulent combination with Garrard, and confessed his intention to secure the complainants in the execution of the deed of trust.

The answer of Garrard admitted, that in March, eighteen hundred and twenty-nine, Boggs requested him to prepare a deed of trust, to secure complainants for their endorsement of a bill of exchange, such as described in complainants' bill; which deed was accordingly drawn and signed by Boggs,—the latter requesting respondent to lay it aside, without having it recorded: stated, that respondent heard nothing more of the matter until about the twentieth of September, eighteen hundred and thirty, when Boggs,

with complainants, called on respondent, and inquired if the deed was recorded; that being informed it was not, they urged it to be done, when respondent informed them it would effect no purpose, as the sixty days required by law, had elapsed: that the complainants then requested respondent to change the date of said deed, but on the suggestion of the respondent, it was agreed to draw a new, rather than interline the old deed: that when about to draw the new deed, respondent having inquired if no other alteration were to be made than as respected the date, was distinctly informed that there was none. The defendants answer further denied any knowledge of the change in the parties to the bill; and called for full proof of the numerous allegations of the bill. The answer further stated, that on the fourteenth of March, eighteen hundred and thirty-one, Boggs having made a purchase of cotton, amounting to the sum of two thousand nine hundred and forty-eight dollars and seventy-nine cents, respondent became his surety, on the proposal of Boggs, to secure him by deed of trust on his property: that on enquiring of Boggs, if the debt secured by the deed of trust to the complainants had been paid, Boggs pledged his honor, that every cent of said debt had been paid: that from the length of time which had then elapsed, and from the circumstance of nothing being said about the matter by complainants, defendant felt assured that the debt had been paid, and, therefore, became Boggs' surety for the amount aforesaid, and took a deed of trust upon the same property, previously conveyed to complainants. Defendant averred, that the note which he had thus become surety on, was in

suit, and unless he had the benefit of his deed, would lose the debt.

The cause was finally heard upon the bill, answers and exhibits—the testimony not varying the state of facts presented in the bill, and admitted in the answer; and the Chancellor decreed a sale of the trust property, and required an account to be taken between the parties,—but gave no decree for costs.

From this decree, the defendants below took a writ of error here.

HITCHCOCK, C. J.—This is a writ of error to the Circuit Court of Lauderdale County. The defendants here, who were the complainants in equity below, allege in their bill, that on the eighteenth of March, eighteen hundred and twenty-nine, they became the accommodation endorsers for one George Boggs, junior, on a bill of exchange, drawn by him on White & McClain, of New Orleans, for the sum of four thousand eight hundred and eighty-nine dollars and eighty-one cents, due twelve months after date; that said endorsement was upon the condition that said Boggs should execute a deed of trust upon certain real estate in the town of Florence, belonging to said Boggs; that in conformity with said agreement, the defendant, Garrard, drew up a deed of trust, in which he was constituted the trustee, which was executed by said Boggs, but which remained in the hands of said Garrard, not recorded: that on the fifteenth of April, eighteen hundred and twenty-nine, said Boggs again applied to them, stating that White & McClain declined accepting said bill, unless the

complainants would become joint drawers with said Boggs, of said bill, which was to be drawn on White; the firm of White & McClain having just then been dissolved. That accordingly, on the eighteenth April, eighteen hundred and twenty-nine, another bill was drawn by Boggs and the complainants, as drawers, in favor of Kirkman & Rosser, on White, for the sum of four thousand eight hundred and eighty-nine dollars and eighty one cents, payable twelve months after date; upon which the first bill was given up and destroyed; which last bill was accepted. That upon the executing this last bill, it was agreed between the parties, that the complainants should be secured upon the same by deed of trust, as was done in the first bill: that in the month of September, eighteen hundred and thirty, the complainants applied to Garrard to complete the deed of trust, that the same might be executed and recorded: that Garrard, without adverting to the change which had been made in the date, and the manner of the responsibility of the complainants, adopted the former deed, by changing the date to the twentieth September; that the deed was then executed and recorded, without the discrepancy being observed, till long after, by the complainants.

The bill charges, that the deed was executed expressly for the purpose of securing the complainants for their liability on the last bill, and for no other purpose. It charges, that Boggs failed to pay the bill, and that the same, at maturity, was protested; and that it has been paid by the complainants: that Boggs has become entirely insolvent; and that their only chance for indemnity is upon the property secured by the

deed of trust: that they have called upon Garrard
to cause the property to be sold, but he refuses, al-
leging that he has a superior lien on the same pro-
perty, which is of later date.

The answer of Boggs admits the material allega-
tions of the bill. Garrard admits the execution of
the deed as described by Boggs; but which he states
was not recorded at the request of Boggs: that he
heard nothing more of the matter until the twentieth
September, eighteen hundred and thirty, when Boggs
and the complainants, Webb & Smith, called on him
to enquire if the deed had been recorded, when he
informed them that it had not; upon which, they re-
quested him to to have it done: that upon his advis-
ing them that, as sixty days had elapsed, the record-
ing would answer no purpose, they requested him to
change the date; upon which he advised them to
have a new deed drawn out, rather than to interline
the old one, which they requested him to do: that
as he was about to write the deed, he enquired of
the parties present, if any change was to be made
in it, when he was told, no other change than that of
the date was required. He denies that he had any
knowledge or intimation of the change in the bill.
He further states, that on the fourteenth March, eigh-
teen hundred and thirty-one, Boggs and one Wood-
cock applied to him to be their security for the sum
of two thousand nine hundred and forty-eight dol-
lars and ninety-two cents, and that Boggs proposed
to give him a deed of trust on the above named pro-
perty; upon which, on enquiring of Boggs, he was
informed by him, on his honor, that the debt secured
by the deed of trust mentioned in the complainants'

bill, had been satisfied; that from the length of time that had elapsed, and he never having heard the subject mentioned by any of the parties, combined with the pledge of Boggs that the debt had been paid, reluctantly became the security of Boggs and Woodcock, and took a deed of trust upon the same property; which he sets up against the deed first above mentioned.

The case was heard upon bill, answers and exhibits, and a decree was made, directing the property to be sold, and the money paid over to the complainants: and a commissioner was appointed to take an account of the rents and profits of the property.

From which decree, the case has come here.

It is conceded by the counsel for the plaintiff in error, that as between the complainants and Boggs, a Court of Equity would be authorised to make a decree for the complainants: that the security having been intended for the indemnity of the complainants against their responsibility on the second bill, the mistake, error, or omission, to describe it properly in the deed of trust, can not be taken advantage of by him; it being the peculiar province of a Court of Equity to compel a party to perform his agreement according to its terms, and to the manifest intention of the parties.

But it is contended, that however true this may be with respect to the original parties, yet, that this can not be done, to the prejudice of third persons, who have honestly acquired an interest in the subject matter, and that in this instance, the conduct of the parties, in negligently omitting, when they applied to Garrard, to have the deed perfected and re-

corded,—to apprise him of the change in the date, and manner of the liabilities of the parties,—gives him a superior equity over them.

Admitting the correctness of the principle, it is difficult to perceive the application of it to this case. If the existence of the lien is admitted as between the original parties, and Garrard has been led to believe, from the complainants, that it had not been discharged, of what consequence to him was it, whether there was an error in the description of the bill, or not. The important fact for him was, whether the property was incumbered. That it was so, is true: that he knew it, is equally so; and if he has been misled, is it not owing entirely to his reliance upon the assertion of Boggs, that the lien had been discharged. The language of Boggs to him was, that the *debt* for which the deed was given, had been paid. Now what was the debt? The bill described, had been cancelled, it is true; but the *debt*, which in contemplation of law, was secured, was not paid. The inference which he drew, from the silence of the parties, and the length of time that had elapsed, can not aid him, as they are no bar, at law or in equity, to the complainants' demand. The record of the deed was notice to all the world, of the existence of the lien; and nothing could discharge it, but the payment of the debt, or the voluntary relinquishment by the *cestui que trust*. The only negligence which involves any responsibility, was in his incautiously trusting Bogg's declaration: and having relied on his veracity, he must take the consequences of his treachery. If he had been apprised of the error, in the description of the bill, it would not

4P　　　　11

have effected the case. He could, with the same propriety, rely upon the matters he now relies upon ——the silence of the parties.—The length of time, and the declaration of Boggs, would have applied in that case, as well as in this. If there is any thing wanting to make the case conclusive against him, it is, that he was himself the trustee of the complainants—bound to protect their right, and through whom they were to convert the property into money, in case of need.

*1 Peters, 13.

The counsel for the plaintiff in error, relies upon the case of *Hunt* vs *Rousmaniere's adm'rs ;* in which it is held, " that a Court of Equity may compel parties to execute their agreements ; but it has no power to make agreements for them." The object of that bill was to compel the administrators of Rousmaniere to carry into effect a contract, which it was admitted, the intestate, in his life time, intended should be effected. The Court refused to aid the party, on the ground, that the intestate had, in his life time, executed precisely such an instrument, as upon reflection, and advice of counsel, was thought the most proper to effectuate the contract : that was done, which the the parties intended to do. There was no mistake, either in fact or law, to correct. The death of Rousmaniere had defeated the execution of the intention of the parties; of which his other creditors claimed the benefft.

The principles recognised in the case cited, are directly applicable to the case before us, and are binding upon Garrard as well as Boggs. Claiming under Boggs, with notice of the lien, he is estopped, as

well as Boggs. There is no application here to make a new contract, or to reform one.

We are, therefore, clearly of the opinion, that as he was affected with notice of the trust deed, and not having been misled by any act of the complainants, he is chargeable with their prior equity.

It is insisted by the counsel for the defendants in error, that the decree in this case, is not such a final one as will authorise a writ of error. It is true, that after disposing of the main principle of the bill, the Court has directed an enquiry into the value of the rents and profits during the time the property has been in the possession of the defendant below; of which he should make report to a subsequent term of the Circuit Court: and there is no decree for costs. There is, therefore, something left for the action of the Court below, and which can not be done in this Court. If the final action of the Court below, had been had upon this part of the decree, this Court would have felt bound to reverse it.

Under the circumstances of the case, the writ of error must be dismissed, with costs.