A. E. & W. J. LEDYARD et al. *v.* HENDERSON, TERRY & Co. et al.

FINAL DECREE — WHAT IS — CANNOT BE SET ASIDE, WHEN. — A decree which ascertains the sum in the hands of a party to be accounted for, and those who are entitled to it, and orders it to be paid over to the parties entitled to it, and directs the costs of the suit to be paid, first, out of the fund, and makes no reference to a master, seeks to ascertain no new fact, but assumes that the court is in full possession of all the facts, so as to adjudicate between the contestants, according to equity and conscience, is a final decree, and cannot be set aside by the court which rendered it [after the expiration of the term of the court at which it is rendered.

APPEAL from chancery court of Monroe county. BRADFORD, J.

Henderson, Terry & Co., A. E. & W. J. Ledyard, and McRae & Boykin sued out attachments against an absconding debtor, Joseph Brown. Judgments were rendered in all the attachment suits, and the property attached ordered to be sold. The property was sold by the sheriff, and the proceeds applied to certain other attaching creditors whose attachments were prior in point of time to those of A. E. & W. J. Ledyard and McRae & Boykin, but junior to that of

Henderson, Terry & Co. ; the attachment in their favor (H., T. & Co.) having been vacated on the ground that they had no subsisting debt at the time the attachments were sued out. The Ledyards and Boykin & McRae filed their bill in the court below to set aside the judgment rendered in the attachment suit of Henderson, Terry & Co. v. J. Brown, and to compel J. M. Acker, another senior attaching creditor, to resort to other property upon which he, Acker, had a lien, also to enjoin the sheriff, Dobbs, from paying over the amount in his hands to Henderson, Terry & Co. and J. M. Acker. The bill states that Dobbs had a certain amount of money in his hands arising from the sale of the attached property, and that he had levied on the sum of $3,500 in bank bills, for which he had made no return, that, after the payment of the senior attaching creditors, Evans and Thornton, that the balance in the hands of the sheriff, N. H. Dobbs, be paid over to complainants. Henderson, Terry & Co. answered the bill, and, as against them, a decree was rendered vacating their judgment. A demurrer was filed by Acker, which was sustained, and the bill dismissed as to him. Process was returned as to N. H. Dobbs, "executed on N. H. Dobbs, 22d July, 1859." Service of process was acknowledged by J. H. Anderson, who was, at the time of the filing of the bill, sheriff, and at the time of the levy of the attachments, deputy of sheriff Dobbs. On the 14th of November, 1859, decree *pro confesso* against Dobbs, Anderson and Acker, and at the same term set aside as to Acker.

At the May term, 1860, the following decree was made : That the judgment of Henderson, Terry & Co. be set aside as a fraud upon the rights of complainants. "It further appearing that Newman H. Dobbs has in his hands the sum of $4,016, the proceeds of the sale of property attached, described in exhibit A to the bill, and the further sum of $2,492 22, making in the aggregate the sum of $6,508 22, in the hands of said N. H. Dobbs, for distribution among complainants according to their respective rights." It is therefore decreed, that out of said money the said Dobbs

shall pay the cost of suit. That he shall pay to William Evans, Parrot Evans and Thomas Thornton certain sums of money with the costs of their different suits, to A. E. and W. J. Ledyard the amount of their judgment and costs, and the residue, if any, over to McRae & Boykin.

It is further decreed, that Newman H. Dobbs take and state an account of his actings and doings with said trust fund of $6,508, with the several parties, on the basis of this decree; that he charge himself with said trust fund and credit himself with the sum paid the several parties as herein directed, and that he report the same to the next term of this court.

From May, 1860, to November, 1866, no action was taken in the cause. On the 22d November, 1866, at rules, an order for an attachment against Dobbs was made, because of his (Dobbs) failure to make and state an account as required by the decree of May, 1860.

On the 22d November, 1866, Dobbs filed his account, showing balance due of $85 58. To this account of Dobbs exceptions were filed. When filed does not appear, though they are entitled to the May term, 1866, the term preceding the one at which the report was filed. At the February term, 1868, the exceptions were sustained and a final decree rendered in the cause; at the same time, on motion of Dobbs, this final decree was set aside.

On the 12th August, 1868, Dobbs moved to set aside the decree *pro confesso*, and the interlocutory decree of May, 1868, on account of fraud, misrepresentation, injustice and oppression. At the August term, 1868, the motion was sustained, the decree *pro confesso* and the decree of May, 1860, were set aside, and Dobbs allowed sixty days in which to file his answer. Dobbs answered the bill, denying that he had levied on the money as charged. At the term at which the answer was filed, the cause was set down for hearing by consent of complainants and defendant, and a final decree rendered against Dobbs for the sum of $85 00.

To the action of the court in setting aside the decree *pro*

*confesso* and the interlocutory decree of May, 1860, complainants excepted, filed their bill of exceptions, and make this the ground of their assignment of error.

*William F. Dowd*, for appellants.

An inspection of the record will show that a decree was rendered in this cause settling all the questions in dispute, and directing the clerk and master to take and state an account, and to ascertain the precise amount due by defendant to complainants. In 1861, the defendant filed his account, dated on its face at that time, but, by omission of the clerk, not marked filed until afterward. To this exceptions were filed by complainant. The cause was delayed by the crowded condition of the docket until 1868, when defendant came in and moved to set aside the decree, and for leave to file his answer. On this motion testimony was taken. The defendant pretended, 1st. That he had no notice the writ was regularly returned executed; 2d. That he was misled by the complainant's counsel. This is positively denied, and the proof introduced by defendant shows that what was said by the counsel was literally true. That all that was required by the decree was that defendant should account for the trust fund. The testimony shows that defendant waited until after the death of the only two witnesses by whom complainants could sustain the allegations of the bill, and then moved to set aside the decree. 1st. The decree was final. Mills v. Hoag, 7 Paige, 18; Cook v. Bay, 4 How. (Miss.) 485; Torrance v. Smedes, 27 Miss. 786. 2d. If the decree was final, the chancellor had no jurisdiction to set it aside after the term at which it was rendered. It can only be set aside on bill of review, or on writ of error. Sagory v. Bayless, 13 Smedes & Marsh. 155. 3d. It is insisted that the service of the writ or the return of the sheriff "executed," was defective. This was waived by the appearance of the party and filing his account in obedience to the decree, and advantage could only be taken by writ of error. Smith v. Bradly, 6 Smedes & Marsh. 485;

Harman v. Agricultural Bank, 2 ib. 207; 38 Miss. 546. 4th. If the decree were even interlocutory, it could not be set aside after so great a lapse of time, and especially after the death of two witnesses for complainants. Wooster v. Woodhull, 1 Johns. Ch. 541.

*Houston & Reynolds,* for appellees.

The action of the court below, at the August term, 1868, setting aside the decree *pro confesso* and the decree of May, 1860, is assigned as error. 1st. If the decree of May, 1860, was a final decree, we admit that it could not be set aside on motion at a subsequent term; if an interlocutory decree, the court may, in the exercise of a sound discretion, vacate or set it aside at a subsequent term, and at any time before a final disposition of the cause. Cook v. Bay, 4 How. (Miss.) 485; Davis v. Roberts, Smedes & Marsh. Ch. 543. 2d. We insist that the decree of May, 1860, is an interlocutory decree. An interlocutory decree is pronounced for the purpose of ascertaining some matter of law or fact preparatory to a final decree. Therefore, when it happens that some material circumstance or fact necessary to be made known, and has to be ascertained by reference to a master, it is an interlocutory decree. Kane v. Whittick, 8 Wend. 224; 1 Harr. Ch. 420. A decree which disposes of the main principles involved in the cause, and directs an inquiry by a commissioner as to matters which require a report to be made to a subsequent term, and containing no decree for costs, is an interlocutory, and not a final, decree. Gerrard v. Webb, 4 Porter (Ala.), 73–83; Dubar v. Woodcock, 10 Leigh, 629; Johnson v. Everett, 9 Paige, 636; Jaques v. Methodist Church, 17 Johns. 555; Goodwin v. Miller, 2 Mumf. 42; Travers v. Waters, 12 Johns. 500. A decree can never be said to be final where it is impossible for the party in whose favor made to obtain any benefit from it, without again setting the cause down for hearing before the court, upon the equity reserved upon the coming in and confirmation of the report of the master, to whom it is referred to ascer-

tain facts which are absolutely necessary to be ascertained before the case is finally disposed of, or which the chancellor thinks proper to have ascertained before he grants relief to the complainant. Johnson v. Everett, 9 Paige, 638; 8 Wend. 224; 12 Johns. 500.

A decree directing defendants to convey, on or before the next term, and to acknowledge the deed before the clerk, adding that the question of cost and all other matters are reserved till the final hearing and cause continued, is not a final decree. Thompson v. Peebles, 6 Dana, 391. A final decree is one which ends the case, decides the whole matter in controversy, determines the costs, and leaves nothing further for the court to act on. Cook v. Bay, 4 How. 485.

To apply these legal principles to the decree of May, 1860, it is an interlocutory decree, because: 1st. The question of costs was not disposed of or settled by it. 2d. It directed a reference to Dobbs to make and state an account, and report at a subsequent term, of matters which were necessary to be ascertained before the cause could be finally disposed of. It was necessary for the court to ascertain, from the report of Dobbs, what amount of cost he had paid out of the trust fund in the suits of Wm. Evans, Parrot Evans and Thos. Thornton, facts necessary to be definitely settled before the cause could be finally disposed of. 3d. Complainants could not have obtained any benefit from the decree without again setting the cause down for hearing on the coming in and confirmation of the report of the commissioner. Under the decree of May, 1860, what sum was Ledyard and Boykin & McRae entitled to recover from Dobbs? What was the balance in his hands, after deducting the amount paid to the other creditors, and the costs of the other attachment suits? This balance is not ascertained by the decree, and could not be until the coming in and confirmation of the report of Dobbs or some other commissioner. The main object of the bill was to recover from Dobbs certain moneys in his hands. Other parties claimed an interest in the

fund; the rights of some were recognized, and of others denied and successfully resisted. Until the balance in Dobbs' hands was definitely ascertained the controversy was not ended. 4th. As appears from the subsequent proceedings in the cause, another decree was necessary, in order to settle the matters in litigation and give complainants the benefit of success. It is a significant fact that, in the final decree referred to, the decree of May, 1860, is styled an interlocutory decree. This, though not conclusive, shows how counsel for appellants in the court below regarded the decree.

Having reached the conclusion that the decree of May, 1860, was an interlocutory decree, the next question that presents itself, did the chancery court err in setting it aside and permitting appellee, Dobbs, to answer the bill? The vacating, suspension and alteration of an interlocutory decree is in the discretion of the court, and with its exercise an appellate court will rarely, if ever, interfere.

A decree rendered on default will be re-opened to enable defendant to make defense upon the merits, where he has been deprived of such defense by mistake or accident, or by negligence of his solicitor, or where he was prevented from answering from assurances from complainant that he would not hold him responsible for any part of his demand, and, if he had answered, the decree must have been for a less sum. Gill v. Carter, 6 J. J. Marsh. 485; Millspaugh v. McBride, 7 Paige, 509; Gwin v. Harris, Smedes & Marsh. Ch. 714.

As to the facts detailed in the affidavits offered in support of the motion to re-open the decree, these affidavits show: 1st. That the claim of appellants, that Dobbs had levied on bank bills for which he had made no return, was unfounded, that he had never made such a levy, and that he had accounted for every thing in his hands, except about the sum of $85. If it were true, that Dobbs had seized the bank bills by virtue of the attachment, and had failed to make any return of the same, it was complain-

ant's duty to move against him for the false return, or to have compelled him to have returned the same. Taking their judgment for the property mentioned in the return, they are concluded by it and estopped from setting up that they are entitled to other property not mentioned in the return of the officer levying the attachment. But this is not material. 2d. That, at the time the process purports to have been executed, Dobbs was in Virginia or Tennessee. 3d. That counsel for complainants assured him repeatedly that his purpose was to recover only the recognized and understood balance in his hands, which he was always willing to pay over. 4th. The only pretense of hardship that the affidavit offered for complainants shows is, that he learned the facts as to the levy upon the bank bills from two witnesses, who were, at the time the motion to re-open was made, dead. But it appears, from the other affidavits, that there were four living witnesses who were personally cognizant of all the facts, and witnesses whose veracity complainants did not attempt to impeach.

After the decree of May, 1860, nothing was done in the cause until 1866. If complainant, at the fall term, 1860, had moved for an attachment against Dobbs for his failure to report as required, the question of fact which was brought up in 1868 would then have undergone investigation while the two witnesses of complainant's were living. The delay in the matter is the result of complainant's laches and neglect.

SIMRALL, J. :

It is conceded by the counsel for the appellees, that, if the decree against Dobbs, referred to in the motion, was "final," then there was no power in the court at a subsequent term to set it aside. Harr. Ch. Pr. 622, thus defines a final decree : " When all the circumstances and facts necessary to a complete explanation of the matters in litigation are brought before the court and so fully and clearly ascertained by the pleadings on both sides, that the court from them is

enabled to collect the respective merits of the parties litigant, and upon full consideration determines between them according to equity and good conscience." "It is interlocutory, when some material fact is either not stated in the pleadings, so that the court cannot determine 'finally' and makes a reference or directs an issue, and, in the mean time, suspends final judgment until the fact is so ascertained, as to enable it to pronounce finally."

We have examined the cases referred to by counsel, on this point. In Johnson v. Everett, 9 Paige, 638, the chancellor decided the conveyances void, as against the judgments, but did not decree their payment, or the costs, nor was the receiver appointed under the decree directed to do so. This was not final. In Travis v. Waters, 12 Johns., the decree was for conveyance of part of the lands, and it was referred for an account of the quantity of land to be conveyed, and of the payments, and of the balance, if any was due, on the payment of which the conveyance was to be made. The question of costs was reserved until the coming in of the report. So in Kane v. Whitlock, 8 Wend., the decree settled the main point in controversy, that the conveyance was a mortgage, and not an absolute deed, but directed a reference to investigate and report the amount for which it should stand as a security. In Jaques v. Methodist Church, 17 Johns., after the decree, in 1815, "facts were to be ascertained," and a further report, which became the basis of the final decree in 1818. In these cases, the court considered it a material element to the finality of a decree, "that all the material facts in the cause should have been ascertained." In Goodwin v. Executors of Myers et al., 2 Mumf. 42, the decree directed the executors to sell the lands and report their proceedings, etc. In 4 Porter, 83, the decree was for sale of lands, required an account, no decree for costs. In none of these cases was the decree considered final. Turning now to those in this court (Robinson v. Johnson, 40 Miss. 500), the decree was for the sale of lands, to satisfy a vendor's lien. This

was "final," although there was no decree confirming the sale.  In Cook's Heirs and Creditors v. Bay, 4 How. 503, the decree vacated certain sales of the property of Cook, appointed a receiver to take charge of it, ordered an account, upon instructions given, ordered an issue to a jury to assess damages sustained by mismanagement of Cook's estate, and reserved the question of costs, and all other questions, in the mean time.  It is manifest that this decree was not final.  The case of Harvey v. Bronson, 1 Leigh, 118, is cited.  In that case a commissioner was appointed to sell the lands, who was to make report. "The rights of all parties were fully and finally settled, and the costs decreed."  The appointment of the commissioner was merely to execute the decree.  In Terrence & Snyder v. Kerr, 27 Miss. 786, a decree of the probate court, ascertaining the amount due the distributees, and ordering its payment by the administrators, is a final decree.

It only remains to test the decree of June, 1866, by the principles established in the authorities, especially those of this state.  This decree ascertains the sum in the hands of Dobbs to be accounted for, also the claimants who are entitled to it, and their respective priorities.  It orders the appellant to pay it over to these several parties, in the order named, until the whole of it is distributed.  It directs the costs of the suit to be first paid out of the fund.  It assumes that the court is in full possession of all the facts, so as to adjudicate between the contestants, according to equity and conscience.  No reference to a master was necessary, nor was any made, to bring to the knowledge of the court, a new fact, or ascertain the truth of a contested one, in order to consider of it on a final decision.  The decree ascertains what sum the appellant shall pay, to whom, and in what order he shall make it.  It cuts off the largest creditor, Henderson, Terry & Co., from participation, because their judgment was fraudulent as to the complainant, and on all the matters proposed to be litigated by the bill is conclusive and final.  Nothing more remained to be done, except to

carry the decree into execution. We regard the final part of it, ordering the appellant to report his distribution and dealing with the fund, as a means simply of bringing to the knowledge of the court the fact that he had complied with it. It is like the report of a commissioner appointed to make a sale.

Nothing is better settled in our books than that a final decree cannot be set aside at a subsequent term, on motion. It can only be assailed on appeal or writ of error, or by original bill for fraud or other sufficient reason. The disclosures made on the motion show that great injustice has been done the appellant by holding him to account, as the decree does, for $2,491 39, the money said to have been levied upon ; and we would be inclined to open the decree, so as to enable him to make defense, if it could be done consistently with the principles and practice that govern the court. It is his own fault not to have appeared and made defense. We think the chancery court erred in regarding the decree of June, 1860, as interlocutory, and in sustaining the motion to set it, and the order of *pro confesso* against Dobbs.

Wherefore these interlocutory orders of the chancery court are reversed, and cause remanded.