*Curry and Cates & Lindsey* for plaintiff.

*Marginal note:* LEWIS *vs* OUTTON'S AD'R.

---

# Lewis *vs* Outton's Administrator.

ERROR TO THE MADISON CIRCUIT.

## *Decrees.  Liens.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

This record was before this Court at the last term, on the appeal of *Portwood* vs *Outton's administrator*, and an opinion then delivered, settling the controversy be-

*Marginal note:* CHANCERY.

*Marginal note:* Case 121.

*Marginal note:* May 18.

*Marginal note:* Statement of the case and questions for revision.

tween those parties. That opinion is referred to for a partial history of this case, which is now brought here by writ of error, sued out by Lewis against Outton's administrator, assigning errors to the final decree which was rendered in September, 1839, which questions the correctness of the amounts ascertained and fixed by the Court at the previous February term, as due from Lewis to Outton, and intended to be secured by the settlement and article of agreement of 1833. Outton's counsel has pleaded the statute of limitation as a bar to the writ of error, which presents the first question for consideration. The solution of this question turns upon the character of the decree of February, 1839. If that decree be final, as it ascertains and fixes the amount due from Lewis to Outton's administrator, (the correctness of which is now questioned,) and was rendered more than three years before this writ was sued out, the plea is a good bar—if it was interlocutory only, then as it was within the power of the Court, and might be changed or modified at any time before the expiration of the term at which the final decree was rendered, no writ of error or appeal could have been taken from it—the plea is not a good bar, as the limitation does not commence running until the final decree was rendered.

The decree of February, not only ascertains and fixes the amount due from Lewis to Outton's administrator, "but orders and decrees that Lewis pay the same on or before the first day of the next June Court." The terms of the decree imply that it is absolute and final, and, disconnected from the objects of the suit, we would feel bound so to regard it. It does not import on its face to be a decree *ni si*, which should *not* decree payment to be made absolutely, but should merely ascertain the amount due, and admonish the defendant, that *unless* payment is made on a future day designated, that a decree would be rendered enforcing the lien on the property sought to be subjected. The mere fact that payment is ordered to be made at a future day cannot render the decree interlocutory. For if a complainant's right to land were determined, and an order and decree rendered that a conveyance should be made, on or before some future

The character of a decree *ni si* & decrees final.

day, the decree would be no less final, than if the order should be made for a conveyance forthwith.   It is true that the Court might and would have control over the cause, for the purpose of enforcing execution of its decree: but the decree, notwithstanding, would be deemed at least so far final as to authorize an appeal or writ of error to this Court, and if so, then the statute would commence running from the rendition of the decree.

But though the decree in this case imports in its terms to be absolute and final, looking into the record and perceiving that the object of the suit was not merely the ascertainment and liquidation of the amount due, but the enforcement of a lien upon property for its payment, and that but for the latter object, the proceeding could not have been instituted in chancery—indeed, that the latter was the primary and main object of the proceeding—and if even the Chancellor could go beyond that object in his decree, he would not have the right to do so, or to decree personally against the defendant, until the property secured by the lien was exhausted: we must conclude that the decree of February was intended only as a monition to the defendant to make payment of the amount so ascertained, preparatory to a final decree for the sale of the property held under the lien, and that an execution was not intended to be sued out, nor could be sued out on the decree, or other means used to enforce it, than an enforcement of the lien upon the property, which was done by final decree at the subsequent September term.   We think, therefore, that the latter decree is the final decree in this case, and which being rendered less than three years before this writ was sued out, the plea cannot be sustained.

Upon the merits, we would remark, that we have looked into this record with scrupulous care and attention, as we have done twice before, between other parties, and are constrained to come to the conclusion, that the amounts ascertained and fixed by the Court below, as the amount due and payable by Lewis to Outton's administrator, greatly exceeds the amount that should have been decreed.

LEWIS
*vs*
OUTTON'S AD'R.

When the object of a bill is not merely the ascertainment of a sum claimed by the complainant, but the enforcement of a lien in satisfaction thereof (which is contested on the ground of jurisdiction) a decree ascertaining the balance and directing its payment is not final.

The article of settlement between Lewis, Outton, Grimes, &c. as to the amounts to be refunded by Lewis to Outton, is ambiguous in its terms, but we are inclined to think, that upon its face, and independent of extraneous facts, which will hereafter be noticed, it is susceptible of being construed, and may be construed to embrace only the actual advances previously made by Outton, for the benefit of Lewis, and the costs and charges that he had been subjected to in the prosecution of the claims assigned to him to secure those advances, and should not be construed to embrace the entire amount of the claims so assigned.

The first clause of the article upon this subject stipulates, "that Lewis pay back the *sums advanced,* with interest, and his costs, in one and two years equal instalments, for which the upper ferry and the farm upon which Lewis resides be mortgaged, &c." The second clause provides, that "the money to be paid Outton as within, is *embraced by* the judgments in the Jessamine Circuit Court in his favor, &c. with the costs in the Fayette Circuit Court, Singleton *vs* Outton; also the costs in Jessamine, against Matson and Grimes, and the amount now in the suit, after deducting the amount of Singleton's judgment against Outton, &c." The first item refers to the judgment which had been assigned by Lewis to Outton for $800, against Grimes and Matson; the last item, to the $5000 note on Grimes and Matson, which had also been assigned, and in the suit to collect which the parties had been engaged in a long, angry and unsuccessful litigation.

If the last clause in the article referred to was intended to embrace the whole amount of those claims, language much more appropriate and unambiguous, might, and most likely would have been used expressive of that object, as the article was drafted by a skillful attorney, who had been employed in the suit, and was well acquainted with all the facts involved. The amounts to be refunded, are the amounts advanced, and which are *embraced by* those judgments and note, and, looking to the object for which they were assigned, *secured by them.* But it is not stipulated or argued, that the sum to be refunded is the

amount of those judgments and note. The advances may be *embraced by* those judgments and note, and they may have been assigned to secure them, yet not be *equal* to the *amount* of the same. · And, as will hereafter be shown, they were assigned, at least the note of $5000, as a security for advances, and not as an absolute sale of the note.

This construction is sustained and borne out by the facts and admissions of Outton in this cause. James Haggin, Outton's attorney in the suit on the note against Grimes and Matson, states "that he took an active part in the negotiation of the compromise, and he believes that the terms were reduced to writing mostly by him; that it was his effort and desire so to arrange it that Outton should be *reimbursed his money advanced, with simple interest, and his costs, and no more, and with that intent the writings were penned."*

In the first assignment by Lewis to Outton, of a note of $5000, payable in eight years, and of the article of agreement between Lewis and Grimes and Matson, about the sale of the ferry, when the note sued on was delivered up to Lewis, to enable him to take depositions to sustain its genuineness, the plea of *non est factum* having been pleaded—in the last clause of the assignment the following stipulation is contained: "I, (meaning Lewis,) do hereby assign and transfer to said Outton so much of said contract and note as may save him harmless from any loss on the assigned note in suit as aforesaid, and do authorize said Outton to dispose of them, or either of them, (after the termination of the suit aforesaid,) or so much thereof as may be necessary to *pay said Outton the amount of the interest he may hold in the said note,* and the cost expended in the prosecution of said suit." This stipulation clearly shows that Outton held only a certain interest in the note, and not the absolute right, and that it was placed in his hands to secure that interest, which it may reasonably be presumed was created by some advancement made by Outton to Lewis, and which will be made to appear evident hereafter. One thing is certain, that he was not entitled to the whole note, but it was held by him as security only for

some amount. He cannot be entitled, therefore, to the whole amount of the note, but only to such interest in it as he shall show himself entitled to, or to such sum as he shall show he has advanced on the security of the assignment, over and above the amount admitted by Lewis in his answer as having been advanced.

Again, Outton studiously avoids setting forth in his original bill any advances made by him ; nor does he intimate that he held only a partial interest in the judgments and note, nor that they were assigned to him to secure money advanced, but goes for the whole, together with all the costs which he has expended, amounting in the aggregate to over nine thousand dollars.

Lewis answered, alledging specifically, that Outton had, at different times, loaned him money, at 2½ per cent. per month, till the sum amounted to $1500, when he drew a bill for the same, which was endorsed by Cunningham, bearing date about the 20th of October, 1828, payable in twelve months, and embracing 2½ per cent. interest per month ; that this bill, at the the time it was given, embraced the whole amount, with the illegal interest that was then owing from him to Outton ; that a part of the bill was paid at maturity, and the balance secured by another bill, carrying the same interest, amounting to $1056, bearing date the 31st Oct. 1829, and payable in twelve months ; that he made another arrangement with Outton, by which he procured other advances at the same rate of interest, and for which he executed two notes or bills secured by Wm. McConnell, the aggregate amounts of which, with the usurious interest, evidenced by a memorandum in his possession, in the hand writing of the complainant, is $586 50 and $268 92. "He is certain that those notes did run a considerable time at that illegal rate of interest, and that a large portion of them is illegal interest." That the complainant also settled for him with Steele $10, and that he obtained also another advance from the complainant, at the same rate of interest, to secure which he assigned him a note for $300 on John Curd. And he expressly denies that he ever received any other sums, or advancements, from the complainant, prior to the assignment of the note of $5000

and of the judgment of $800, or that any other advance- <span>Lewis<br>vs<br>Outton's Ad'r,</span>
ments were made by Outton before the commencement
of the legal controversy on those claims, and that they
were assigned only to secure those advancements, and no
other.

In the conclusion of his answer, he calls on the com-
plainant to answer on oath, and say what advances he has
made for or to him?   When were they made?   To whom,
and in what were they made?   What was the interest re-
served?   Was it not at the rate stated?   Was it not embra-
ced in the bills or notes?   Did he not prepare and hand to
be copied, that clause in the agreement which states,
''that the demands to be secured to him were embraced
by the judgments, &c. ?''   And charges that if said clause
be construed to embrace more than the actual advances
made by Outton, and the costs, that it was inserted and
made to bear that construction by the fraud of Outton,
and was signed by him in entire mistake of its import.

Outton answers the cross answer of Lewis, as to the <span>An evasive an-<br>swer to charge of<br>usury construed<br>into an admis-<br>sion.</span>
usury, evasively and suspiciously, and resorts to the usu-
al device, that ''he does not recollect,'' &c. and endea-
vors to escape from responsibility, by alledging that ''he
purchased the acceptances of others, or the notes of Lew-
is from others, and paid his drafts on him ; that they oc-
casionally settled, and in one of those settlements he re-
ceived from him the two judgments,'' &c.   He says he
bought the $1500 bill in market, at what rate of discount
he does not recollect—so with respect to the McConnell
bill, &c.—denies that one cent of usury was added to the
Curd note.   He thus tacitly admits the claims set out and
charged by Lewis, as embracing the whole amount of the
advances made to him or for him, and sets up or claims no
other, and does not deny that any other than those charg-
ed were made, nor that the Cunningham bill was reduced
by payments to $1056, and for that sum renewed—nor
pretend to deny that the judgments and note were assign-
ed to secure those advancements, and for no other pur-
pose.   Nor does he deny that the advances only, and
costs, were intended to be secured by the article, or
that the second clause, which seems to bear a different
import, was prepared and handed in to be copied into

the article fraudulently, &c. These evasions, admissions and omissions to answer, lead the mind irresistibly to the conclusion, that the charges made by Lewis are substantially true, and that consequently, usurious interest, by colorable pretences, was exacted at some rate, and most likely at the rate charged, and that no other advances were made before the commencement of the suits upon the claims assigned, than those speciefid in the answer of Lewis, and to secure them and them only were the assignments made. Nor have we any evidence in this cause, that any other was made after the commencement of the suits, except the advances made in the payment of costs, and other claims specifically mentioned and provided for, or alluded to in the article of settlement.

Upon the whole, we are perfectly satisfied that the Circuit Court erred in assuming as the basis of its decree, the whole amount of the several claims mentioned in the article as having been assigned, and that the decree is greatly beyond the amount that should have been decreed. But it is impracticable for this Court, in the present state of the record, to ascertain with any certainty the amount that should be decreed—to attempt it, great injustice might be done to the one or the other party. It is, therefore, the opinion of this Court, that the decree of the Circuit Court be reversed, and cause remanded, that further steps be taken to ascertain the amount of the advancements made by Outton, to or for the benefit of Lewis, and also, the amount of usury exacted. Or that the case be submitted to an auditor, with power to hear proof, examine the parties who are living, on oath, make a statement of the accounts, and report to Court, with a view to a final decree upon data more certain than that which is afforded by the record now before us.

And the plaintiff in error is entitled to his costs in this Court.

*Harlan & Craddock and Caperton and Robertson* for plaintiff: *Turner* for defendant.

[Judge Breck did not sit is this case.]

## Stivers & Page *vs* Prentice & Weissinger. <span style="font-variant: small-caps">Pet. & Sum.</span> X

<span style="font-variant: small-caps">Error to the Jefferson Circuit.</span>

*Parties. Service of process. Bill of Exchange. Notice.*　　Case 122.

<span style="font-variant: small-caps">Judge Marshall</span> delivered the opinion of the Court.　　May 19.

The case stated.

This petition was brought by Prentice & Weissinger, as the holders, against Stivers, as the drawer, and Page, as the indorser of a bill of exchange, drawn by Stivers at Louisville, upon Samuel A. Smith, merchant, Nashville. The summons on the petition was returned, executed as to Page, but as to Stivers, "not found," and no further process seems to have issued against him. The record states that at a Court, &c. on the 8th of Jan. 1840, "came the defendant" and "filed his separate demurrer," &c. "*which plea,* referred to in the foregoing order, is as follows, to-wit: Prentice & Weissinger *vs* Stivers & Page. The defendant comes," &c.—then follows the plea of *nil debit,* in the singular number, on which issue was joined. The next entry is, that at the December term, 1840, came the plaintiffs, and on their motion, leave is given to retake a deposition, on giving to the *defendants* due notice, &c. At the November term, 1841, "came the parties by their attorneys," "and the *defendant* filed *his* exceptions to the deposition," &c. And on a subsequent day of the same term, "came the parties by their attorneys, and the Court being *not* sufficiently advised of and concerning the defendants exceptions, &c. overruled the same," and to try the issue, came a jury, &c. who found a verdict for the plaintiffs, on which a judgment was rendered against the *defendants.* Immediately after which, "the *defendant* tendered to the Court his bills of exceptions;" and at a subsequent day, "came the *defendant,* by his attorney, and prayed an appeal," &c. "which is granted *him* upon *his* executing bond," &c.

The bill of exceptions, No. 1, states that on the trial, the defendant, Page, moved to exclude the evidence as incompetent under the issue, &c. and the defendant,

Stivers, moved to exclude it as not competent, &c. as to him. Bill of exceptions, No. 4, states, that on the calling of the cause, the *defendants*, Page and Stivers, filed exceptions to the deposition, &c.—and the bills of exceptions, Nos. 2 and 3, state that the *defendants* moved for the instructions therein stated.

Stivers and Page prosecute a joint writ of error to reverse the judgment against them.

It is apparent from the detailed statement which has been made of the contents of the record, that there is nothing, exclusive of the bills of exceptions, in any manner indicating the appearance of Stivers, or his liability as a party in the suit, to have a judgment rendered for or against him. Exclusive of the bills of exceptions then, the record would be wholly insufficient to sustain the judgment, because if it be a judgment, as it seems to be, against two, there was no service of process nor appearance, nor judgment by default as to one; and if it be a judgment against Page alone, there was no disposition of the cause as to the other.

*When there is no service of process on one of several defendants, and nothing showing his appearance but the statement in the bill of exceptions, the judgment is erroneous and will be reversed.*

The question then arises, whether the statements contained in the bills of exceptions, importing that Stivers actually attended and participated in the trial as a defendant, is sufficient to supply the defect or omission in the record proper, and to make him a party, so far as to authorize a judgment for or against him? This question, we think, must be answered in the negative. The office of the bill of exceptions is not to make parties, nor to show who are parties; but to embody and preserve in permanent form, the occurrences at the trial, or other incidental matters, which would not otherwise appear in the record, in order that the party excepting may have the revisory judgment of an appellate tribunal as to all matters which may affect either the merits of the case or the regularity of the proceeding. There may or may not be a bill of exceptions, at the pleasure of one or the other party. There must in all cases be enough upon the record to sustain the judgment. Certain omissions in the pleadings or statements of fact, may be aided by verdict, and perhaps by the bill of exceptions, which shows the evidence on which the verdict is founded. But as to parties,

the verdict itself could not supply a defect in the record of the proceedings, and therefore a bill of exceptions, going merely in explanation of the verdict, could not supply it.

As Stivers did not plead he was not a party to the issue, there was, as to him, no issue, and therefore no verdict on which to found a judgment; as he was not served with process, and neither pleaded nor in any manner entered his appearance once on the record, there was no foundation for a judgment against him *de hors* the verdict. His mere personal attendance at the trial, and taking part in the examination of witnesses, or in moving for instructions, did not make him a party to the record any more than his presence and examination as a witness, or as a looker on, would have done. And the bill of exceptions can not make or prove him to be a party, subject to or entitled to a judgment in the former case more than in the latter. Any other conclusion would lead to the utmost confusion and uncertainty in regard to the effect and operation of judicial proceedings.

We are satisfied, therefore, that the judgment should be reversed, on account of the irregularities in the proceedings—with regard to which we cannot omit to remark, that whether the transcript before us contain a true or a false copy of the record of the proceedings in Court, it evinces a negligence or unskilfulness on the part of the Clerk, for which it would be difficult to find an apology.

The exceptions to the deposition of Hagan, the Notary Public, whether Stivers united in them or not, were properly overruled—for as to Page, the notice and authentication, were sufficient, and as to Stivers, as there was no issue there was nothing to be proved by the Notary.

And with regard to the instructions, said to have been moved for by the defendants, they were properly overruled, because the presentment of the bill at the dwelling house of the acceptor, in the absence of any proof of a special usage to the contrary, and he not being a banker, was sufficient, and especially as there was one there who answered for him, that no provision had been made for payment, and for the same reasons, the presentment at

*Guthrie* for plaintiffs: *Duncan and Ripley and Browne* for defendants.