B. L. CROMWELL *v.* ADDISON CRAFT, *Adm'r.*

1. FINAL DECREE — WHAT IS. — A decree on a bill to enforce a vendor's lien, which purports to be made on a full hearing "on the bill and exhibits," and other proceedings in the case, and establishes the right of complainant to enforce his claim against the land, and appoints a commissioner to sell it, unless, within a specified time, the defendants pay complainant the sum found due, and all costs, and directs the commissioner, in case of sale, to report his proceedings at the next term, is not an interlocutory, but a final decree.

2. EXECUTION SALE — PURCHASER ACQUIRES ONLY THE RIGHTS OF THE DEFENDANT IN EXECUTION. — A purchaser, under execution, against the vendee of land, who has a bond for title, acquires only the interest of the obligee in the bond, and takes subordinate to the paramount equity of the vendor.

3. VENDOR AND VENDEE — VENDEE IN POSSESSION UNDER VENDOR CANNOT ACQUIRE AND SET UP ADVERSE TITLE. — A vendee continuing to hold the possession of land, to which his vendor admitted him, cannot acquire an adverse title and set it up against his vendor.

APPEAL from the chancery court of Marshall county. STEARNS, Chancellor.

The opinion of the court distinctly presents this case, as viewed by the court, and relieves from the necessity of any further statement of the facts shown by the voluminous record.

Only so much of the "full and exhaustive" arguments of counsel, as relates to the view taken by the court, is inserted.

*Featherston, Harris & Watson*, for appellant.

We will now notice the point mainly relied on by the counsel for the appellees.   It is, that the decree rendered in the case of Addison Craft, administrator of John Gregg et al. v. J. B. Ellis et al., in the chancery court of Marshall county, in 1867, for the sale of this land for the purchase money, is not interlocutory, but final. That the chancellor could not set it aside, or arrest its execution, that he could not go behind it, to inquire whether there was a defect in Gregg's title to the land, or whether the contract was one which a court of chancery would enforce.   To this position, we insist, there is a ready answer—that the decree for the sale of the land, was interlocutory and not final, that the whole proceedings in that case were *in fieri*, until the final decree confirming the sale of the land, came in, and was confirmed by a decree of the court; that the chancellor had complete control over the decree, to alter, amend, correct, or set it aside, at any time, before confirmation of the final decree of the sale, when made to the court.   This power of the court over the decree, extended to and embraced all the proceedings anterior to the confirmation of the final decree in the case.   Let us see what is an interlocutory, and what a final decree.

A final decree is one which makes an end of the case, and decides the whole matter in controversy, and determines the cost, and leaves nothing further for the court to act on.   Cook v. Bay, 4 How. (Miss.) 485; Mills v. Hoag, 7 Paige, 18; Tennant v. Patton, 6 Leigh, 196;

Talbot v. Todd, 7 J. J. Marsh. 456; Johnson v. Everett, 9 Paige, 636; Crittendon, ex parte, 5 Eng. 333; Mackey v. Bell, 2 Munf. 523; Gassard v. Webb, 4 Port. 73; Lewis v. Boutton, 3 B. Mon. 453; Hays v. Mays, 1 J. J. Marsh.; Kelly v. Stanberry, 13 Ohio, 408.

A decree authorizing an executor to sell lands for the payment of his testator's debts, and report to the court his sale, is not a final, but an interlocutory decree. Goodwin v. Miller, 2 Munf. 42. We think the decree for the sale of the land in this case, was clearly interlocutory. It did not settle the question of costs, but after providing for the sale of the land, reserves all other questions for further adjudication, when the report of the sale of the land should come up for confirmation. But we are referred to the case of Robertson v. Johnson, 40 Miss. 211, as establishing a contrary doctrine. That case must be construed with reference to the facts presented by the record, and the question before the court; and when viewed in that light, it is not an authority on the question presented by the record in this case. In the case of Robertson v. Johnson, the counsel asked this court to dismiss the case on two grounds, without having made a motion to dismiss. The grounds were, that the appeal bond was defective—not properly signed, and the appeal was not taken, as the statute provided it should be, from an interlocutory decree. These objections were taken in the argument on the final hearing of the cause. This court decided that it could not take jurisdiction of the question when presented in that way for the first time; that the question should have been raised by motion. The court then proceeds to state that the presumption of law is, that the bond was properly signed, that the agent had authority to sign his principal's name in the absence of anything in the record to the contrary. The court then states that the decree appealed from, was not interlocutory, but final. Can this decision be regarded as an authority on this point, when the court

states that the question was not properly presented by motion, and that they could not notice it? Is it not mere *obiter dicta*? But, if it should be 'considered a decision on the point, it should be received and applied in that limited and qualified sense with reference to the particular question then before the court, in which it was delivered. The question was the right of appellant to appeal in a particular mode from that kind of decrees. The law favors the right of appeal, and when that is the only question involved, the strict technical rule in defining final and interlocutory decrees, is never applied. A decree may be final for the purposes of appeal, and not so for any other purpose. This distinction has been recognized and enforced by the courts. " In the United States chancery courts where the right to appeal is limited to final decrees, the words ' final decrees' have not been held to their strict and technical sense, but a more liberal construction has been given to them." Fongay v. Conrad, 6 How. (U. S.) 203 ; Whiting v. Bank of U. S. 13 Pet. 15; Michond v. Girod, 4 How. (U. S.) 503.

The case of Stebbins v. Niles, 13 S. & M. 307, is also relied on by opposing counsel. In that case, the decree, which was decided to be a final one, settled the question of costs, provided for the sale of the land, and left nothing to be done but the distribution of the money. That decree was very different from the one enjoined by the complainant in this case ; here the land was to be sold, the sale reported and confirmed, and the question of costs to be settled and the money to be applied. In this case of Stebbins v. Niles, the question before the court, was the right of appeal and the mode of appeal. The court say the decree was final in most of its features, from which language, it may be inferred that it may be final for some purposes and not so for others. We do not think this case authoritative on this point. If we are right in the position, that the de-

cree enjoined by the complainant in the case of Craft et al. v. Ellis et al., was interlocutory, and not final, then it was within the power of the chancellor to arrest it, and set it aside. Interlocutory decrees and all the proceedings anterior to the final decree, are *in fieri* and may be changed or set aside by the court. Hunter v. Carmichal, 12 S. & M. 726; Mitchell v. Harris, 43 Miss. 314; Cook v. Bay, 4 How. (Miss.) 485; Redus v. Hayden, 43 Miss. 637; Pattison v. Joselyn, ib. 378; 1 Eq. Dig., 287, 288. In the above stated cases of Mitchell v. Harris, and Redus v. Hayden, which are the last on the question by this court, the doctrine is distinctly laid down, that the proceedings are *in fieri* until there has been a report of the sale of the land brought in by the commissioner, and confirmed by the court. Can there be any doubt then, about the correctness of our position with reference to this decree ?

We will now proceed to notice the next error assigned. Cromwell, the complainant in this case, was not a party to the suit of Craft and others against J. B. Ellis and others, instituted in 1866, in which the interlocutory decree was rendered for the sale of this section of land in 1867. It is not pretended that he was made a party by notice, either actual or constructive, nor was he mentioned in the pleadings. We allege, therefore, that as he was not a party to the suit, he is not bound by the decree, or the proceedings in the case. But the counsel for the appellees insist, that we are successfully met.

*Watsons & Manning*, for appellee.

Upon the state of facts, we contend that the decree in the court below, dismissing the bill and dissolving the injunction is correct, and should be affirmed upon two grounds, either of which is conclusive.

1st. There is no equity upon the face of the bill.

2d. The decree rendered in favor of appellees in 1868, is final, and cannot be collaterally attacked for error, as appellant has attempted to do.

First, then, we would call the attention of the court to this remarkable fact; according to his own allegations and admissions, the said Cromwell has no interest whatever in the land to be sold, under the decree to enjoin which his bill was filed. Neither the said Harris, Ellis nor Gober, ever attempted to set up in themselves any title to said land adverse to that of the said John Grigg. The said Harris bought from the said Grigg, and then sold one-quarter of the section to the said Gober, and three-quarters to the said Ellis, giving to the former his own title bond, and transferring to the said Ellis the title bond of the said Grigg. In 1856, the said Ellis purchased from the said Gober his quarter, and he has been holding possession of said land ever since, under this transferred title bond of Grigg, and the deed from Gober. It is true the said Ellis claims to have held said land since 1854, as the tenant of his brother, George L. Ellis, but the proof is that he got possession of said land from said Harris and Gober, and that this possession has been continuous and uninterrupted ever since. Where this is so, the doctrine of law is well established that the possession of the vendee is that of the vendor, even where the vendor had no title to the land which he attempted to convey. The vendee, by his purchase, recognizes the title of his vendor, and he will not be permitted to retain possession of the land under any title adverse to that of his vendor. See the case of Hill v. Samuel, 31 Miss. 307, 311, and cases there cited. But even conceding that it was competent for the said James B. Ellis to become the tenant of the said George L. Ellis, who claimed said land under a title adversary to that of the said Grigg, without having first put an end to his contract with the said Grigg, in the manner prescribed by law, viz.: by demanding a deed, and return-

ing possession to the vendor, and that the title to said land has thus ripened into a perfect one in the said George L., by the lapse of time. Still, the said Cromwell can have no possible interest in the said land. All the title which J. B. Ellis had to this land, was derived from the said Grigg, and the said complainant, Cromwell, only claims an interest in this land as the purchaser thereof at execution sale, under a judgment against the said J. B. Ellis. Now, therefore, as the said Cromwell only claims under an execution sale of the said J. B. Ellis's interest in said land, how is it possible that he is entitled to the relief he prays, when, according to his own repeated assertions in his bill, said Grigg never had any title whatever to said land ?

In his bill, the appellant uses this language :

" Your orator further states, that said complainants allege in their said bill, that the land hereinbefore described, (the section in controversy,) was claimed as an Indian reservation by the name of Sha-wa-ka, under the treaty between the United States government and the Chickasaw Indians, made in May, 1834, and that this Indian conveyed said land by deed to Wiley and Winston, and that they conveyed the same in 1836, to Hugh Elliott, and that said Elliott conveyed the same by deed in 1837, to the aforesaid John Grigg.

" Your orator admits that these deeds were executed, but he denies that they vested any title in the said John Grigg, and alleges the truth to be that they were, and are, utterly worthless in law and equity.

" Your orator alleges the truth to be that Sha-wa-ka had no title at all to said land, and that the said John Grigg, who derives his title to the said land from the said Indian Sha-wa-ka, had none, and could have had no title to the said land at the time he sold the same to the said W. W. Harris. Yet, the said Grigg's administrator and representatives now seek to enforce the

vendor's lien upon land to which they have not now, and never had, any title."

Now, if Grigg had no title, he conveyed none to Harris, Harris none to Gober, Harris and Gober none to James B. Ellis, and by a sale of the land under an execution against Ellis, no interest passed to said Cromwell. None of those who held possession of, or claimed the land in controversy between said Grigg, and the appellant, ever held said land, or claimed to hold it, under any title adverse to that of the said Grigg except the said Ellis, and as we have before seen, his attempt to hold the same under the said George L., not being preceded by any demand for a deed, or return of possession to the party from whom he obtained it, or under whose title bond he was holding, was illegal, and did not operate to change possession. Such being the case, the right of the said Grigg, or his representatives, to enforce his lien against said land for the unpaid purchase money due on said land, is certainly paramount to any claim or title which any derivative purchaser under Harris, Grigg's vendee, could possibly have. Therefore, if as appellant in his bill alleges, Grigg now has no title to, or interest in, said land, most certainly the appellant is, by the statements and allegations of his own bill, a stranger to the matters involved in the suit which he has enjoined, and his bill was properly dismissed by the court below, he being, according to his own showing, an intermeddler in the affairs of others, and which do not concern him.

On page 11 of his bill, the appellant alleges that the deed of John Grigg was no better than that of a stranger, and that equity will not enforce or recognize a doubtful title. From the same page we quote the following language:

"Your orator would further state that the said complainants, in their said bill, allege that the title to the said land has been made good by the lapse of time, and

the undisturbed possession of said Grigg and his vendees, if in no other way. Your orator denies this allegation, and alleges the truth to be that the said Indian Sha-wa-ka never had any title to the land sold to the said Grigg, although said Grigg endeavors to derive title from him." Your orator would state that instead of the title to the said land having ripened into perfection in the said John Grigg and his vendees, by the lapse of time, the same seems to have become perfect in the hands of one George L. Ellis." But the appellant nowhere claims that Jas. B. Ellis, under whom he (appellant) claims to derive his interest in the land, ever derived any title or interest whatever to or in said land from said George B. Ellis; so we are at a loss to see how the true ownership of the land in controversy by said George L., as alleged in his bill, can be of benefit to appellant, even conceding it to be true. In his attempt to show that said Grigg had no title at the time of the sale by him to said Harris, and that his representatives and heirs have since acquired none, the appellant completely overthrows his own title, and then deprives himself of all right to any relief whatever in this or any other court. That the allegations of the appellant in his bill cannot be varied *for his benefit*, by proof, or even by the admission of appellees in their answer, is well established. 37 Miss. 615; 11 Wheat. 103; 13 S. & M. 76. The complainant must stand or fall upon his own equity. 26 Miss. 257.

Again, we submit that even though the allegations in complainant's bill make out a case, so far as an interest in the said land is concerned, yet he would not be entitled to the relief prayed for. His prayer is that the $800 paid by said Harris, to said Grigg, should be refunded to him, the appellant, with interest, &c. Now, the said J. B. Ellis never having paid anything to the said Harris, but having simply assumed his indebtedness to the said Grigg, and taken a transfer of the title

bond of said Grigg, made originally to said Harris, and never having paid anything on this indebtedness to said Grigg or anybody else, we deny, as a legal proposition, that the said Ellis would have been entitled to this $800 paid on the land by Harris, although there had been a regular and legal rescission of the contract, to which the said Jas. B. Ellis became a party by the transfer to him, as aforesaid, of Grigg's title bond by said Harris.   But, going farther, and for the sake of argument, conceding that upon a rescission of the contract, Ellis, the assignee of Harris, would have been entitled to a decree against Grigg, or his representatives, for the $800, still this claim of the said J. B. Ellis against the said Grigg or his estates, was at best nothing except a chose in action.   And it is too well settled to be controverted, that a chose in action cannot be the subject of a levy, nor pass at execution sale.   Rev. Code, p. 531, art 290 ; Gwynne on Sheriffs, 224, 225; 2 A. K. Marsh. 788, 789 ;  39 Miss. 666, 668.    Upon these grounds we contend, then, that there is no equity upon the face of the appellant's bill ; that, admitting all his allegations, he fails to show any right to relief ; that, admitting he showed an interest in the land, as the purchaser, at execution sale, of the interest of J. B. Ellis therein, still the court had no power to grant the relief asked ;  but, that by his own showing, he is a stranger to the interests in controversy, and no better than an intermeddler.

But, in the second place, the decree rendered in favor of the appellees in 1868 is final, and cannot be collaterally attacked for error.

There can be no doubt, we submit, that this decree, rendered in favor of appellees, as hereinbefore set out, is a final decree.   It settled all the rights of the parties, ordered a sale of the land, determined the exact amount due by defendants, and provided for its payment, and also the payment of the costs of the suit.

And that such a decree is final, beyond all question, see Robertson v. Johnson, 40 Miss. 502; Whiting v. Bank 13 Pet. 15; Ray v. Law, 13 Cranch, 179; Story's Eq Pl., sec. 408; Stebbins v. Niles, 13 S. & M. 307.

And that if the court had acquired jurisdiction of the subject matter, and rendered a final decree, it is conclusive, and cannot be collaterally attacked for error. See 43 Miss. 49; ib. 140; 28 Miss. 413; 24 Miss. 507, 519.

Appellant does not deny that the court had jurisdiction of the subject matter, but he asserts that he was a proper party to the suit, but was not made so by the appellees, and therefore the decree is void as to him.

He forgets, however, that he bought in 1867, *during the pendency of the suit,* and that the doctrine of " *lis pendens* " relieved appellees of that trouble; that by said doctrine he bought subject to the event of the suit, and that by it his lips are forever closed in this or any other court as to the matter in controversy. 1 Johnson (Chancery), 580; 18 Curtis, 29; 31 Miss. 83; 9 Howard, 34. The doctrine of " *lis pendens* " is equally applicable, whether the subject matter of the suit is in the county in which the suit is pending, or elsewhere. No authority can be found sustaining the qualification of this doctrine, for which appellant's counsel contends.

Fraud *in obtaining* the decree sought to be enjoined by appellant, would, indeed, vitiate the whole, but no such charge is brought. Complainant, the appellant, does charge fraud on the part of the said Grigg, in selling land to which he had no title. This the answer denies, but even in the absence of a denial, that would not be such fraud as would vitiate the decree. To vitiate a decree the fraud must be *fraud used in obtaining it,* and such fraud as cannot be made to appear on the record for the consideration of the appellate court. Foster v. McDonald, 27 Miss. 610, 618, 619.

Then, unless complainant's bill be a bill of review,

or one in the nature thereof, the judgment of the court below in dismissing it was correct, and the decree must be affirmed. But it cannot be a bill of review. Such bills can only be filed upon two grounds: first, for errors of law apparent upon the record; and second, upon the discovery of new matter which could not possibly have been used upon the previous trial. Story's Eq. Pl., § 404, 405. And the appellant, in his bill, alleges neither of these two grounds.

Again, all the parties to the original decree are not made parties to this proceeding to set it aside, and that *all must be parties* in bills of review is unquestionable. Story's Eq. Pl., § 409; 8 Peters, 262; Daniels Ch. Pr. 1725–1727; 27 Miss. 417. We advert, however, but briefly, to the fact that the bill in this case cannot be a bill of review, as complainant does not claim for it that character. Then, since the decree in favor of appellees was final, it can only be reopened or set aside by a bill of review. But complainant's bill is not a bill of review, hence it must be merely a collateral attack; and since it alleges no fraud, it must be a collateral attack for error, upon a final decree, which, as we have before shown, is clearly incompetent. The decree of the court in dismissing appellant was therefore correct upon this second ground, and must be affirmed.

In the suit instituted in 1866, by Addison Craft, administrator, etc., et al., as aforesaid, the summons was returned " executed " on the said Jas. B. Ellis, so that, even had he not subsequently appeared in said cause, and obtained sixty days in which to plead, and thus cured any defect which may have been in the sheriff's return, still the said decree could not have been collaterally attacked for defective service. See 6 S. & M. 492; Campbell v. Hays, 43 Miss. 561.

TARBELL, J. :

In 1851, John Grigg, since deceased, sold to W. W.

Harris a certain described tract of land in Tippah county, in this state, for the sum of $3,200, of which sum he paid $800 cash, and gave his notes for the balance, Grigg giving to Harris the usual contract, or bond, for title upon full payment of the purchase money. Harris sub-sold a portion of said land to one Thos. C. Gober, giving his bond for title when the notes given for part of the purchase money should be paid. In 1852, Harris transferred his contract to James B. Ellis, as purchaser thereof, and the latter also bought in the sub-contract of Harris to Gober, and thus became the owner and possessor of the whole tract of land, subject to the prior rights of Grigg, the original vendor. In 1856, no further payments having been made upon the contract, except the $800, at the date of the original purchase, Grigg filed his bill in the vice-chancery court of the northern district of Mississippi, against Harris, Gober, and Ellis, to enforce his vendor's lien. Ellis appeared, answered, and contested, on its merits, the proceedings of Grigg.

Pending the suit of Grigg against Harris, Gober and Ellis, a judgment at law was recovered against Ellis in the circuit court of Tippah county, in favor of H. E. Debler, for $1,452.82, and upon execution sale under this judgment, the tract of land above described, was sold by the sheriff in 1866, B. S. Cromwell, the now complainant, becoming purchaser.

During the war, the papers in the case of Grigg against Harris, Gober, and Ellis, were lost, and the action was revived in 1866, when it proceeded to a conclusion, resulting, on the 21st day of October, 1868, in a decree for the sale of the said land. The commissioner appointed to conduct the sale, having advertised the land for sale, the said Cromwell filed his bill to enjoin the sale, to open the decree therefor, and to obtain a rescission of the contract between Grigg and

Harris, to obtain a decree for the money paid Grigg by Harris, and for other purposes.

The bill of Cromwell goes fully into the history of the contract between Grigg and Harris, and of the litigation on the part of Grigg against Harris, Gober, and Ellis, to enforce his vendor's lien, traces the title to the land, and avers that Grigg had no title thereto, and that the contract with Harris was a fraud on the latter; refers to the judgment at law, execution sale, and purchase by Cromwell, who is claimed to have succeeded to all the rights of Ellis; insists on an adverse holding of the lands by Ellis against Grigg; claims that the decree for sale is interlocutory and not final; and prays for injunction restraining the sale, for a rescission of the contract between Grigg and Harris, and that in virtue of his purchase at execution sale, Cromwell is entitled to a decree for the $800 paid by Harris to Grigg on contract in 1851.

Some changes of parties took place during this time. Grigg having died, Addison Craft was appointed his administrator. Ellis became a bankrupt, and John D. Fermal became his assignee, and a party to the original suit. The administrator of Grigg appeared at the suit of Cromwell, answering fully to all the allegations of the bill, as did also the other defendants named. Several incidental matters are set out in the pleadings not deemed necessary to be stated here at length, such as the revival, in the name of the administrator, of Grigg, deceased, and against the assignee of Ellis, bankrupt. Upon the final hearing, on the pleadings, exhibits, and proofs, the injunction was dissolved, and the bill of Cromwell dismissed, from which decree the case comes to this court. The record is voluminous, and the arguments of counsel full and exhaustive; but we are of the opinion that the merits of the controversy may be briefly presented, and that, in fact, one or two questions only require to be considered.

This case, as we view it, turns mainly upon the character of the decree in the action of Grigg against Harris, Gober, and Ellis, for sale of the land in controversy. The bill of Cromwell charges no fraud in obtaining the decree attacked, and hence, is not in the nature of a bill of review, nor is it so claimed, but proceeds upon the theory that the said decree is interlocutory, and the complainant therefore seeks to open the whole merits of the case of Grigg against Harris, Gober and Ellis. If that decree is final, the complainant is concluded thereby. An inspection of that decree shows, and it recites, that it was made upon a full hearing " on the bill and exhibits, the *pro confesso,* and the order and decrees heretofore made in the cause." It proceeds to establish the contract between Grigg and Harris, and that Harris, Gober and Ellis were in peaceable possession of the land under said contract. It declares the amount due on the contract at the date of the decree. It adjudges the complainant in that proceeding entitled to a specific performance of the contract. It provides that unless the defendants therein pay to the complainant therein the sum so declared due, and the cost of suit, within six months from the date of the decree, the commissioner named in the decree should proceed to sell the land on a credit of six months, and he was empowered to execute to the purchaser a deed to the premises, reporting his proceedings to the court at the term next succeeding the sale. This seems to be a final decree within all the cases to which we have been referred by either counsel, and by all to which we have had access. The counsel, in his argument, says the costs were not settled by the decree, and that other equities were reserved to be determined on the coming in of the report of sale, in which he is evidently laboring under a mistake. The decree adjudges the balance due on the contract, and the costs of suit to be paid by defendants in that action, and there is nothing reserved

except action upon the commissioner's report of sale. Such a decree, according to all the authorities, is final. 4 How. (Miss.) 485; Mills v. Hoag, 7 Paige, 18; Tennant v. Patton, 6 Leigh, 196; 5 Eng. (Ark.) 333; 2 Munf. 523; 4 Porter, 73; 3 B. Mon. 453; 13 Ohio, 408; Robertson v. Johnson, 40 Miss. 500; Stebbins v. Niles, 13 S. & M. 307; 13 Pet. 15; 3 Cranch, 179. And cannot be collaterally attacked. McLeod v. Harper, 43 Miss. 42; Wall v. Wall, 28 ib. 409; 24 ib. 517.

The cases of Mitchell v. Harris, 43 Miss, 314, and Redus v. Hayden, ib. 637, are wholly unlike the case at bar. There the sale only was set aside for cause. The merits of the controversy were not sought to be reopened, nor was the power to do so claimed, or declared, or intended so to be. Here the entire cause of litigation settled by the decree is attempted to be reopened and contested *de novo*, as though it had never been disposed of. Were the decree in question interlocutory, then this case would be within the rule of 4 How. (Miss.) 485; Pattison v. Joselyn, 43 Miss. 378, and other similar cases.

We deem it essential to refer to one other point in this case only. It is exceedingly doubtful, for two reasons, whether Cromwell acquired anything by his purchase at the sheriff's sale heretofore referred to: 1. It is alleged in the bill, and such is its whole theory, that Grigg had no title to the land in dispute. If he had none, the purchaser at the execution sale against Ellis acquired none. 2. It is very questionable whether the interest of Ellis in this land was susceptible of levy and sale by execution; but at most he succeeded only to the interest of Ellis, and this was subordinate to the rights of Grigg, as vendor of Harris, Gober and Ellis, who were holding under him and subject to his claim for the unpaid purchase money. Ellis and those claiming through him were liable to be defeated of their pre-

tensions by the superior equities of the vendor, by virtue of his lien for the purchase money. Walton v. Hargroves, 42 Miss. 18; see, also, Carpenter v. Bowen, ib. 28; and art. 12, Code of 1857, p. 308; ib. art. 290, p. 531.

In this connection, we may remark that upon the record, as we understand it, there is another very serious obstacle to the success of the complainant in this action, viz.: that Ellis, to whose position he succeeds, as the vendee of Grigg, went into possession under his purchase, creating a relation which continues to the present time. Under such circumstances a title adverse to that of Grigg could not be brought in by his vendee, thus holding and successfully interposed to avoid the contract. No doctrine is better settled than that, having recognized a title by purchase, and the acceptance of possession thereunder, the purchaser shall do nothing to the prejudice thereof, so long as the relation continues. As far as we can see, it is not shown by the record that Ellis or Cromwell took the necessary steps to put an end to the contract with Grigg, either by tender of the balance of purchase money due, and demand of a deed, or by surrender of possession, which had been delivered and accepted under the contract; but it is attempted, if we correctly understand the case of the complainant, to set up a title adverse to that of the vendor, while holding under him, which, we apprehend, cannot be done. The previous points considered by us, however, we hold to be conclusive upon the complainant, upon the case presented, wherefore the decree dissolving the injunction and dismissing the bill is affirmed.